Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6025 | **DATE** | 8/8/2002 |
| **CASE TITLE** | Todd Steven Adams vs. Christopher Connors | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]



**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Defendant's Motion for Summary Judgment [#16] is granted. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

FT/*secy* courtroom deputy's initials

U.S. DISTRICT COURT
CLERK
02 AUG -8 AM 11:10
Date/time received in central Clerk's Office

2
number of notices

AUG 0 9 2002
date docketed

docketing deputy initials

8/8/2002
date mailed notice

FT
mailing deputy initials

Document Number

23

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TODD STEVEN ADAMS | ) | Case No. 01 C 6025 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Arlander Keys |
| | ) | |
| CHRISTOPHER CONNORS | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

DOCKETED

AUG 0 9 2002

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for
Summary Judgment pursuant to Federal Rule of Civil Procedure 56.
Plaintiff, Todd Steven Adams, sued Defendant, Christopher Connors,
under the Civil Rights Act, 42 U.S.C. § 1983, alleging that
Defendant lacked probable cause to arrest him, impound his van, and
seize his dog. For the reasons set forth below, the Court grants
Defendant's Motion.

### THE FACTS

In November of 2000, Plaintiff resided in the City of Blue
Island, Illinois, in a 1986 red Chevy Astrovan along with his dog,
Sir Pfizgig Pflatzgraph Pfeirook El Loco Diablo (hereinafter "the
dog"). (Pl.'s Answer to Def.'s Mot. for Summ. J. ¶ 4.)

On November 26, 2000, at approximately 6:26 p.m., Defendant
responded to a radio dispatch call directing him to investigate a
reported disturbance inside a red van in the vicinity of 2214

Prairie Street, Blue Island, Illinois. Upon arriving at the scene of the reported disturbance, Defendant observed a red van, parked facing east on the south side of the street. Defendant stopped his squad car in the middle of Prairie Street, facing east behind the van, and directed his spotlight toward the rear of the van. (Connors Aff., Ex. 1 to Defendant's Rule 56.1 Statement of Facts, ¶ 15-19.)

The rear windows of the van were covered or blacked out. Defendant exited his squad car and approached the van on the driver's side. As Defendant neared the van, he observed that it was shaking, and heard sounds from the inside of the van, which sounded as if a person were banging against the inside wall of the van. Defendant looked inside the driver's window, observed no one in the driver's seat, and proceeded to the front of the van to look through the windshield. Defendant then observed a person in the cargo area of the van, who was moving his arms and "appeared as if he was pounding on something." (Connors Aff., Ex. 1 to Defendant's Rule 56.1 Statement of Facts, ¶ 20-26.)

Immediately upon observing this conduct, Defendant proceeded to the passenger's side of the van and opened the cargo door, at which point Plaintiff exited through the open door. Defendant then asked Plaintiff "what was going on and who was in the van?" Plaintiff replied that he and his dog were "not getting along." In response to Defendant's query regarding Plaintiff's identity,

2

Plaintiff stated his name as Todd Adams, but could not produce any identification. (Connors Aff., Ex. 1 to Defendant's Rule 56.1 Statement of Facts, ¶¶ 27-31.)

Shortly thereafter, Officer Gary Johnston arrived on the scene and stood with Plaintiff while Defendant entered the van. Inside the van, Defendant observed no other persons, but did find a black dog, along with numerous personal items in disarray. Defendant claims that, upon closer inspection, he observed that the dog's front paws and hind legs were bound together with duct tape. In addition, the dog's snout was bound shut with duct tape and duct tape was wrapped around and behind its head. Continuing his search, Defendant sorted through some of the items inside the van, and discovered a purse containing expired identification cards and driver's licenses of four or five females. Defendant placed Plaintiff under arrest, handcuffed him, searched his person, and placed him in the rear seat of Defendant's squad car. (Connors Aff., Ex. 1 to Defendant's Rule 56.1 Statement of Facts, ¶¶ 32-38.)

After arresting Plaintiff, Defendant claims that he returned to the van to remove the tape from the dog's front and back paws. Defendant photographed the dog and the contents of the van, and then removed the duct tape from the dog's snout and head. (Ex. A to Connor's Aff.) Another patrol officer then transported the dog to the City of Blue Island dog kennel. (Connors Aff., Ex. 1 to Defendant's Rule 56.1 Statement of Facts, ¶ 39-43.)

Defendant returned to his squad car and requested a tow truck to remove the van. After the tow truck arrived, Defendant transported Plaintiff to the City of Blue Island Police Department and placed him in lock-up. Defendant issued Plaintiff a ticket, charging him with cruelty to animals pursuant to Blue Island Ordinance. Specifically, Defendant noted that Plaintiff violated the ordinance when he "beat the dog physically and taped its mouth shut with duct tape." (Connors Aff., Ex. 1 to Defendant's Rule 56.1 Statement of Facts, ¶¶44-48, Ex. B to Connor's Aff.)

Plaintiff remained in custody while Defendant investigated the circumstances surrounding Plaintiff's possession of several women's identification cards. Defendant's investigation lasted several hours, during which time he established that the women whose cards Plaintiff possessed were all alive and unharmed, and that the cards were not stolen. Defendant did not charge Plaintiff with any criminal offense relating to his possession of the identification cards. Plaintiff was released from custody on November 27, 2000. The animal cruelty charge was later dismissed. (Connors Aff., Ex. 1 to Defendant's Rule 56.1 Statement of Facts, ¶¶ 49-55.)

Meanwhile, on November 27, 2000, Officer Gregory Kirpach, the Animal Control Officer for the City of Blue Island, relinquished control of the dog to the Animal Welfare League in Chicago Ridge, Illinois. (Connors Aff., Ex. 1 to Defendant's Rule 56.1 Statement of Facts, ¶¶ 45-46.) On or about November 28, 2000, Officer Kirpach

4

spoke with a person (presumably Plaintiff) who claimed to own the dog. Officer Kirpach informed Plaintiff that the dog was being held in Chicago Ridge. He explained to Plaintiff that, because there were animal cruelty charges pending against him, he would likely require a court order to reclaim the dog. (Connors Aff., Ex. 1 to Defendant's Rule 56.1 Statement of Facts, ¶¶ 47-48.) According to Plaintiff, despite his efforts to reclaim the dog, he was never returned. (Pl.'s Mem. in Supp. of Answer to Def.'s Mot. for Summ. J. ¶ 38.)

## PROCEDURAL HISTORY

Plaintiff filed suit against Defendant on August 8, 2001, alleging that Defendant lacked probable cause to arrest Plaintiff, impound his vehicle, and impound his dog. The case was assigned to Judge Pallmeyer, and the parties subsequently consented to proceed before this Court.

Plaintiff filed a motion for summary judgment on December 19, 2001, which the Court denied. On April 15, 2002, Defendant filed a motion for summary judgment, and served Plaintiff with a copy of the Local Rule 56.2 Notice to Pro Se Litigant Opposing Motion for Summary Judgment. The Court ordered Plaintiff to file his response to Defendant's Motion by May 15, 2002. Plaintiff failed to do so, and instead filed his response on May 17, 2002, without leave of Court.

## SUMMARY JUDGMENT STANDARDS

Summary judgment will be granted where there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the Court views the record and any inferences that may reasonably be drawn from it in the light most favorable to the non-moving party. *Simmons v. Pryor*, 26 F.3d 650, 653 (7th Cir. 1993). The moving party need not negate its opponent's claim. *Celotex*, 477 U.S. at 322. Instead, with respect to issues on which the non-moving party bears the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court– that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

Once the moving party has satisfied its burden, the non-moving party must present evidence that establishes a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is genuine and material if it would allow a reasonable jury to find for the non-moving party. *Id.* However, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading ... but must set forth specific facts showing there is a genuine issue for trial." *Id.* Typically, this means that a non-moving party must do more than attack the credibility of the testimony supporting their opponent's

6

motion, because "discredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion." *Id.* at 256-57.

## DISCUSSION

The Court grants Defendant's motion for summary judgment. As discussed below, Plaintiff's response to Defendant's motion suffered from fatal procedural defects. Moreover, even if the Court had considered Plaintiff's substantive arguments, Defendant would still be entitled to summary judgment.

A. Procedural Issues

Plaintiff's response to Defendant's motion is procedurally flawed in two ways. First, Plaintiff failed to file his response in a timely fashion. Second, Plaintiff's response did not provide a systematic response to the numbered paragraphs in Defendant's statement of undisputed facts, as required by Local Rule 56.1. Both defects are fatal to Plaintiff's response.

1. Plaintiff's Failure to Timely File His Response.

The Court may, at its discretion, refuse to accept an untimely response to a motion for summary judgment. *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 897 (7th Cir. 2000). When a party fails to respond to a motion for summary judgment, such inaction constitutes an admission by the non-movant that there are no disputed issues of genuine fact warranting a trial. *Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995). The

Seventh Circuit has repeatedly held that "a decision to disregard all materials submitted after a reasonable filing deadline is certainly not an abuse of discretion;" rather, such a decision preserves the integrity of the process by protecting "the moving party's right to respond to the resisting party's argument and [the Court's ability] to decide the summary judgment motion in a timely fashion." *See, e.g., Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse- Wisconsin, Inc.*, 991 F.2d 1249, 1257 (7th Cir. 1993) (*quoting Pfeil v. Rogers*, 757 F.2d 850, 858 (7th Cir. 1985)).

Here, Plaintiff was well aware of both the necessity of filing a timely response to Defendant's motion, and the consequences of failing to do so. At the status hearing on March 14, 2002, Plaintiff agreed to the briefing schedule under which he was required to respond to Defendant's motion by May 15, 2002. Moreover, at that hearing, the Court specifically impressed upon Plaintiff the importance of meeting Court deadlines. The Court also mailed the briefing schedule to Plaintiff after the hearing. Nevertheless, Plaintiff allowed the May 15, 2002 deadline to pass without filing his response, and without filing a motion for an extension. Instead, Plaintiff filed his response late, on May 17, 2002, without leave of the court. Plaintiff's late filing is sufficient grounds for the Court to refuse to consider his response, and to take as admitted the facts in Defendant's Local Rule 56.1 statement.

2. Plaintiff's failure to comply with Local Rule 56.1.

In addition to filing an untimely response, Plaintiff submitted a materially deficient response to Defendant's Rule 56.1(a)(3) Statement of Facts. The Northern District of Illinois Local Rule 56.1(a)(3)[1] requires a party seeking summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." Likewise, Northern District of Illinois Local Rule 56.1(b)(3) requires a party opposing summary judgment to submit a corresponding document containing a "response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Moreover, Rule 56.1(b)(3)(B) specifically warns that "all material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."

These rules are imposed and enforced in order to streamline the process of summary judgment, and to highlight for the Court those facts that are actually at issue. *See Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989). To that end, the Seventh Circuit has "repeatedly upheld strict enforcement of these

---

[1] Formerly Local Rule 12(m), and still earlier, Local Rule 12(f).

rules... when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994).

Here, notwithstanding its late filing, Plaintiff's response to Defendant's motion falls drastically short of fulfilling the requirements of Local Rule 56.1. Plaintiff's response consists of two documents: Plaintiff's Answer to Defendant's Motion for Summary Judgment, and a Brief Memorandum of Law to Accompany Plaintiff's Answer. Neither document contains a response to each of the numbered paragraphs in Defendant's motion. Both documents are devoid of specific references to the record, affadavits, or other evidence to support Plaintiff's disagreement as required by Local Rule 56.1.

In large part, Plaintiff's Answer and Memorandum of Law consist of disjointed points of law intermixed with disputes regarding Defendant's factual allegations. It is difficult to follow Plaintiff's arguments, and still more difficult to discern when and with what support Plaintiff is disputing Defendant's factual allegations. Although at one point, in the midst of Plaintiff's Memorandum of Law, Plaintiff does specifically address several of Defendant's factual allegations by paragraph number, Plaintiff fails to make meaningful statements in disagreement. For instance, the vast majority of Plaintiff's responses to Defendant's factual contentions take issue with the relevance of the facts, not

their veracity.[2]   Other times, Plaintiff responds to Defendant's factual contentions with what appear to be fragmented legal arguments, citing cases or amendments to the U.S. Constitution, but not specifying whether the facts themselves are admitted or denied. At only two points does Plaintiff make a satisfactory response to Defendant's factual contentions, denying the veracity of the facts, while specifically supporting the denial with reference to the record.[3]

Though Plaintiff's filings are inadequate, the Court is nonetheless aware that Plaintiff is a pro se litigant who is entitled to a degree of accommodation by the Court.  *But see McConnell v. Carlton Club/Ritz Carlton Hotel,* No. 01 C 1874, No. 2001 WL 1539163 (N.D. Ill. Nov. 30, 2001) ("Although pro se plaintiffs are entitled to more lenient standards in some

---

[2]   Plaintiff responded to several of Defendant's factual contentions with comments such as "Not Probable Cause," "Still No Probable Cause," "Fourth Amendment U.S. Const.–did not see same thing when he opened the door–expected privacy within confines of the van 'dwelling'–still not probable cause." These responses and others like them do not provide the Court with any coherent sense of the Plaintiff's view of the facts, let alone the specific denials or admissions required under Local Rule 56.1.

[3]   Plaintiff specifically denied that the dog's paws were taped together (Def.'s 56.1 Stat. ¶ 35) and cited the omission of such details in Defendant's police report and the photographs Defendant took at the scene. Plaintiff further denied that Defendant found any identification cards in Plaintiff's possession (Def.'s 56.1 Stat. ¶ 36), citing the absence of any mention of the cards in Defendant's police report, and the Defendant's failure to produce the cards themselves as evidence. These two denials constitute the only instances of Plaintiff's compliance with Local Rule 56.1(b)(3).

circumstances, the standards do not diminish in complying with procedural rules.") The Court is guided in these matters by "the well-known admonition that district courts must construe pro se pleadings liberally." *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998)[4]. Where a pro se litigant's pleading is otherwise understandable, courts may be generous in dealing with a technical failing. *Id*. However, an unlawful arrest action is extremely fact sensitive and, even when dealing with a pro se litigant, "courts are [not] 'obliged in our adversary system to scour the record looking for factual disputes.'" *Greer v. Board of Educ. of City of Chicago*, Ill., 267 F.3d 723, 727 (7th Cir. 2001) (*quoting Waldridge*, 24 F.3d at 921-22).

In this case, construing Plaintiff's filings liberally, the Court still cannot accept Plaintiff's filings as fulfilling either the letter or the spirit of Local Rule 56.1(b)(3). This is not a case of an otherwise understandable document being discarded on a technicality. Plaintiff filed a total of forty-one pages of text in response to Defendant's motion. Throughout those forty-one pages, Plaintiff vacillates between points of law and issues of

---

[4] Further, in an effort to aid pro se litigants, this district has enacted Local Rule 56.2, which requires a party moving for summary judgment against a pro se litigant to serve the opposing party with a plain-language explanation of exactly what the party must do to comply with Local Rules and oppose the motion. Defendant complied with Local Rule 56.2 by serving Plaintiff with the required statement on April 15, 2002, one month before Plaintiff's filing deadline.

fact, but only twice is there a specific denial of one of Defendant's factual contentions. In spite of the plain instructions Plaintiff received in the 56.2 statement to pro se litigants, and the plain instructions given by the Court, Plaintiff has not made a cognizable effort to comply with the Local Rules. Therefore, even if Plaintiff's response had been timely, the facts in Defendant's 56.1 statement would have been taken as admitted for purposes of Defendant's motion for summary judgment.

B. Substantive Issues.

Plaintiff's procedural failings notwithstanding, the Court would have granted Defendant's Motion for Summary Judgment on the merits. Defendant raises two substantive defenses to Plaintiff's claim, both of which, based on the undisputed facts in the record, require entry of summary judgment in favor of Defendant. First, Defendant asserts that, as a matter of law, probable cause existed to arrest Plaintiff, impound Plaintiff's vehicle, and impound Plaintiff's dog. Alternatively, Defendant argues that there was at least *arguable* probable cause for Defendant's actions and, therefore, Defendant is entitled to qualified immunity from any suit arising out of Plaintiff's arrest as a matter of law.

1. Probable Cause

"The existence of probable cause for an arrest is an absolute bar to a Section 1983 claim for unlawful arrest." *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989). A police

13

officer "has probable cause to make an arrest when 'the facts and circumstances within [his] knowledge and of which [he has] reasonably trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense.'" *Jones v. Webb*, 45 F.3d 178, 181 (7th Cir. 1995) (*quoting Beck v. Ohio*, 379 U.S. 89, 91 (1964)). The facts and circumstances surrounding the arrest must reasonably support more than a bare suspicion that an individual committed an offense, but need not make it a probable certainty. *U.S. v. Garza-Hernandez*, 623 F.2d 496, 499 (7th Cir. 1980). Typically, if the issue of probable cause arises in an unlawful arrest suit, the existence of probable cause is an issue for the jury. *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993). However, if the material facts are not in dispute and would not allow a reasonable jury to find for the non-movant, the Court may find that probable cause existed as a matter of law. *Id.*

At the time Plaintiff was arrested and his dog and van were impounded, Defendant knew the following: 1) someone in the neighborhood had complained of a disturbance in Plaintiff's van; 2) the van was shaking; 3) he observed someone inside the van apparently "pounding on something;" 4) after Defendant opened the side door, Plaintiff exited and remarked that he and his dog were "not getting along;" 5) the dog was bound with duct tape; and 6)

14

Plaintiff was in possession of four or five women's identification cards and/or driver's licenses.

A prudent, reasonable police officer, faced with this set of circumstances, could have believed, beyond a bare suspicion, that Plaintiff had committed the offense of cruelty to animals. Defendant, responding to a call reporting a disturbance, personally observed the van shaking, and saw Plaintiff apparently pounding on something. Moreover, by stating that he and his dog were "not getting along," Plaintiff solidified Defendant's suspicion that the arm movements he saw through the windshield were Plaintiff hitting his dog. Once Defendant discovered Plaintiff's dog bound in duct tape, the circumstantial evidence clearly indicated that Plaintiff was mistreating the dog. Under these circumstances, the Court finds that probable cause existed to arrest Plaintiff for cruelty to animals, as prohibited by Blue Island Ordinance.

Moreover, once Plaintiff was under arrest, it was reasonable to impound Plaintiff's vehicle, both as a source of potential evidence, and to avoid leaving the vehicle unattended on the street. See U.S. v. Duguay, 93 F.3d 346, 353 (7th Cir. 1996) (holding that an impoundment must either be supported by probable cause or be carried out in fulfillment of the police officer's role as caretaker of the streets). Finally, it was entirely reasonable and necessary for the police to take possession of the dog; not

only was the dog evidence, but the unacceptable alternative to impounding the dog was leaving it unattended to roam the streets.

Plaintiff makes numerous arguments against the existence of probable cause, only two of which merit discussion. First, Plaintiff argues that the offense for which he was arrested, cruelty to animals, carried only a monetary penalty, with no possibility of jail time. Therefore, Plaintiff argues, probable cause to believe that Plaintiff committed cruelty to animals, even if proven, cannot justify his arrest. Contrary to Plaintiff's contention, the Supreme Court has recently stated that "if an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Thus, Plaintiff's argument is without merit.

Plaintiff also argues that, because he lived in his van, it should be treated as a dwelling rather than a vehicle for Fourth Amendment purposes. Plaintiff contends that the warrant-less search of his van constituted an illegal search of his home, and that the evidence discovered during that search- namely, the dog and the identification cards- is fruit of a poisonous tree. However, Plaintiff's argument does not square with the law and the facts in this case.

First, living in a van does not entitle one to the same Fourth Amendment protections as one would enjoy inside a residence. The Supreme Court has drawn a clear distinction between arrests that take place in public, for which no warrant is required, *U.S. v. Watson*, 423 U.S. 411 (1976), and arrests that take place in the home, for which a warrant is required. *Payton v. New York*, 445 U.S. 573, 590 (1980). The basis for this distinction is the lessened expectation of privacy that exists in public places. *See U.S. v. Santana*, 427 U.S. 38, 42 (1976). Automobiles are sufficiently public to afford occupants a markedly lower expectation of privacy than a residence, which accounts for the fact that a warrant is not required to search an automobile. *See U.S. v. Matthews*, 32 F.3d 294, 299 (7th Cir. 1994)(holding that an immobile vehicle may be searched without a warrant because there is a lessened expectation of privacy within a motor vehicle). Moreover, the degree to which a person may expect privacy in a given place is not determined by reference to the individual's subjective expectations; rather, it is an objective determination made by the court. *See Santana*, 427 U.S. at 42.

Although Plaintiff may have subjectively expected his van to afford him the full privacy of a home, according to objective Fourth Amendment standards, the expectation of privacy in a vehicle parked on a public street is lower than that of a residence. This

means that probable cause, without a warrant, was sufficient to justify a search of Plaintiff's van.

As discussed above, Defendant had probable cause to enter the van. Once Defendant opened the van door, Plaintiff exited the van and stated that "he and his dog were not getting along." This comment, along with the evidence already in Defendant's possession, provided ample probable cause to conduct a search of the van's interior. Upon conducting the search, Defendant discovered Plaintiff's dog, which had clearly been mistreated, as well as the four or five women's identification cards. All of this evidence was the product of a lawful search of Plaintiff's automobile, and does not constitute fruit of a poisonous tree. Therefore, the Court rejects Plaintiff's argument that the illegality of Plaintiff's arrest follows from the illegality of Defendant's search of the van. Both the search of the van and Plaintiff's subsequent arrest were supported by probable cause.

2. Qualified Immunity

In the alternative, Defendant also raises qualified immunity as an affirmative defense to an unlawful arrest action. Qualified immunity protects government officials from suits arising out of their performance of discretionary functions, "so long as they do not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Berman v. Young*, 291 F.3d 976, 983 (7th Cir. 2002) (*quoting Harlow v. Fitzgerald,*

18

457 U.S. 800, 818 (1982)). For a right to be clearly established "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Schertz*, 875 F.2d at 583. It is not enough for a plaintiff to allege a broad right, such as the right to be free of an unreasonable search; instead, it is necessary to show that, under the specific facts of the case, a reasonable official should have known that he was violating a plaintiff's rights. *See id.*

Although qualified immunity is an affirmative defense, Plaintiff bears the burden of defeating an assertion of qualified immunity. *Sparing v. Village of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001). Summary judgment should be entered in favor of a party raising a qualified immunity defense if "a reasonable police officer in the same circumstances and with the same knowledge ... as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." *Williams v. Jaglowski*, 269 F.3d 778, 781 (7th Cir. 2001).

In this case, even if Plaintiff had shown a lack of probable cause by prevailing in his argument that the van was his home and that a warrant was required to search it, Defendant would still be entitled to summary judgment in his favor based on qualified immunity. A reasonable officer in Defendant's position, approaching a van parked on a public street, would not have known that the van was being used as a residence, and, could reasonably

have believed that probable cause, without a warrant, was sufficient to justify searching the van. Under these specific facts, Defendant would be immune from suit arising out of his search of the van, Plaintiff's arrest, and Defendant's seizure of the dog and van.

## CONCLUSION

Plaintiff's untimely response failed to comply with Local Rule 56.1, therefore, the facts in Defendant's statement of undisputed facts are deemed admitted. Based on those facts, Defendant is entitled to Summary Judgment in his favor.

Even if Plaintiff had filed a timely response that fully comported with Rule 56, Defendant would still be entitled to Summary Judgment because qualified immunity shields Defendant from Plaintiff's suit.

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment be, and the same hereby is, **GRANTED.**

DATED: August 8, 2002        E  N  T  E  R:


ARLANDER KEYS
United States Magistrate Judge